IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GREATER OMAHA PACKING CO. INC., | ) ) ) | CASE NO. CI 25-6523 |
| Plaintiff, | ) ) | |
| vs. | ) ) | **NOTICE OF REMOVAL** |
| SLATE RIVER SYSTEMS, INC., | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT**, by and through undersigned counsel, hereby gives notice under 28 U.S.C. § 1332, § 1441, and § 1446 of the removal of the above-captioned civil action from the District Court of Douglas County, Nebraska to the United States District Court for the District of Nebraska.

In support of removal, Defendant states as follows:

1. On or about August 4, 2025, Plaintiff commenced a civil action captioned Greater Omaha Packing Co, Inc. v. Slate River Systems, Inc. in the District Court of Douglas County, Nebraska, Case No. CI 25-6523. Plaintiff's Complaint is attached hereto, made a part hereof, and incorporated herein by reference as Exhibit A.

2. That on or about October 21, 2025, Plaintiff filed an Amended Complaint which is now the operative pleading in the state-court action. Plaintiff's Amended Complaint is attached hereto, made a part hereof, and incorporated herein by reference as Exhibit B.

3. This Court has original jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs. Specifically:

    a. Upon information and belief, Plaintiff is a citizen of the State of Texas.

    b. Defendant is a citizen of the State of Nebraska.

    c. Plaintiff's Amended Complaint asserts five causes of action, including one claim that specifically seeks liquidated damages in the amount of $100,000, as well as claims for direct and consequential damages arising from the same alleged conduct. Accordingly, the amount in controversy clearly exceeds

$75,000, exclusive of interest and costs, satisfying the jurisdictional threshold under 28 U.S.C. § 1332(a).

4.      This Notice of Removal is timely under 28 U.S.C. § 1446(b) because it is filed within thirty (30) days after service of the Amended Complaint on Defendant.

5.      Venue is proper in this Court under 28 U.S.C. § 1441(a) because the District Court of Douglas County, Nebraska, is located within the District of Nebraska.

6.      Pursuant to 28 U.S.C. § 1446(d), written notice of this removal is being promptly served upon Plaintiff and filed with the Clerk of District Court of Douglas County, Nebraska.

**WHEREFORE**, Defendant respectfully requests that this action be removed to the United States District Court for the District of Nebraska and that no further proceedings be had in state court.

DATED this 5th day of November 2025.

By: _____

Conan Becknell, #27547
Brandon Zimmerman, #28552
Engles, Ketcham, & Olson, P.C.
1350 Woodmen Tower
1700 Farnam Street
Omaha, Nebraska 68102
(402) 348-0900
(402) 348-0904 (Facsimile)
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2025, the above and foregoing document was served by email to the following counsel of record:

**Michael F. Coyle, #18299**
FRASER STRYKER PC LLO
500 Energy Plaza
409 South 17th Street
Omaha, NE 68102
(402) 341-6000
(402) 341-8290 - fax
mcoyle@fraserstryker.com

Timothy J. Thalken, #22173
FRASER STRYKER PC LLO
500 Energy Plaza
409 South 17th Street
Omaha, NE 68102
(402) 341-6000
(402) 341-8290 - fax
tthalken@fraserstryker.com

Olivia F. Stanek, #28219
FRASER STRYKER PC LLO
500 Energy Plaza
409 South 17th Street
Omaha, NE 68102
(402) 341-6000
(402) 341-8290 - fax
ostanek@fraserstryker.com
ATTORNEYS FOR PLAINTIFF


_/s/ Conan Becknell_

Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI250006523
Transaction ID: 0023646427
Filing Date: 08/04/2025 02:41:32 PM CDT

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | |
|---|---|
| GREATER OMAHA PACKING CO. )<br>INC., )<br> )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>SLATE RIVER SYSTEMS, INC., )<br> )<br>    Defendant. ) | CASE NO. _____<br><br><br>**COMPLAINT AND<br>DEMAND FOR<br>TRIAL BY JURY** |

For its complaint, Greater Omaha Packing Co., Inc. ("Greater Omaha"), states and alleges as follows:

## THE PARTIES

1.    Greater Omaha is a Nebraska corporation with its principal place of business in Omaha, Nebraska.

2.    Slate River Systems, Inc. ("SRSI") is a Texas corporation with its principal place of business in Texas.

## JURISDICTION AND VENUE

3.    The Court has subject matter jurisdiction pursuant to Neb. Rev. Stat. § 24-302.

4.    This Court has personal jurisdiction over SRSI who contractually consented to personal jurisdiction in Nebraska. In addition, SRSI purposefully availed itself of the protections of Nebraska law with respect to the transaction at issue.

5.    Venue is proper pursuant to Neb. Rev. Stat. § 25-403.01 because this lawsuit is brought in a county where the action arose, where some part of the transaction occurred out of which the cause of

EXHIBIT

A

action arose, and because SRSI is a non-resident of this State, and because the parties' agreement contains a forum selection clause designating this court as a proper venue.

## FACTUAL ALLEGATIONS

6.      Greater Omaha is an Omaha-based company that processes and ships beef around the world.

7.      Because of the perishable nature of beef, Greater Omaha freezes some of its product lines and stores them onsite on pallets.

8.      To accommodate the storage of frozen beef, Greater Omaha embarked on a project to build a new, ten story tall, fully automated freezer storage warehouse, which was known as "the Cube."

9.      Including the cost of building the Cube, the total cost of this project was approximately $40 million.

10.     Greater Omaha sought proposals from vendors skilled in providing automated warehouse storage solutions.

11.     SRSI is one vendor who submitted a proposal to Greater Omaha for a fully automated freezer storage warehouse.

### SRSI's Expertise in Automated Storage Retrieval System

12.     SRSI sells automated storage retrieval systems ("ASRS").

13.     SRSI is a merchant with respect to ASRS.

14.     SRSI maintained a website which has recently been taken down and its data made inaccessible.

15.     According to SRSI's website, ASRS are "computer-controlled systems that automatically place and retrieve loads from set storage locations in a facility with precision, accuracy and speed. They

- 2 -

are designed for automated storage and retrieval of parts and items in manufacturing, distribution, retail, wholesale and institutions."

16.    SRSI holds itself out to the public as having the skill and judgment to design and successfully install and implement ASRS for warehouses.

17.    According to SRSI's website, "SRSI is a material-handling systems integrator specializing in automation and warehouse information and software systems. We deliver comprehensive, turnkey solutions designed to meet---and exceed---your performance goals."

18.    According to SRSI's website, SRSI is able to "leverage data analysis and expert planning to design and implement automated systems that streamline your operations, solve labor challenges, and optimize inventory control."

**SRSI's RAFT ASRS**

19.    One type of ASRS uses a Right Angle Fast Transfer ("RAFT") robot to move pallets.

20.    Below is a photograph of a RAFT robot from SRSI's website:



21.     According to SRSI's website, "RAFT is capable of having its robots maneuver horizontally and vertically, combining the density of AutoStore, with some of the benefits of a more traditional shuttle system. The result is a technology that densely stores pallets and brings them to any position on the exterior of the grid structure to be picked. RAFT's pallet storage technique allows for an easy integration with conveyors and robotics, or with more traditional manual picks via an individual or fork truck."

22.     SRSI's website states that the benefits of RAFT include:

- RAFT reduces labor and increasing efficiency enabling rapid return on investment

- Maximize storage, increase speed, flexible loading, intuitive user interface, and scalable – add rack, add bots as you expand

- Operates without cranes making ceiling height a non-issue

- Comprises of a customizable grid structure, with robots maneuvering pallets

- Capable of maneuvering pallets horizontally and vertically

- Densely stores pallets and brings them to any position on the exterior of the grid structure allocated

23.     Before contracting with Greater Omaha, SRSI represented to Greater Omaha that it had developed and deployed software to operate the RAFTs at other facilities.

24. Before contracting with Greater Omaha, SRSI represented to Greater Omaha that the hardware it would provide to Greater Omaha had been tested and used in a freezer environment.

25. SRSI concealed from Greater Omaha the fact that the RAFTs had never been tested or used in a freezer environment.

26. SRSI concealed from Greater Omaha that the software that would be used to operate the RAFT System had not been written or tested.

27. Based on SRSI's representations, and concealments, Greater Omaha reasonably believed that the RAFT System SRSI was proposing had been successfully used in freezer environments and that the software to operate the RAFT System had been written and deployed at other facilities.

## SRSI Proposes to Sell a RAFT ASRS to Greater Omaha

28. Greater Omaha met with SRSI to discuss Greater Omaha's specific needs with respect to an ASRS for a new storage freezer warehouse Greater Omaha was planning to build.

29. SRSI represented to Greater Omaha that SRSI had the skill, knowledge, and expertise to design and successfully install and implement a fully automated RAFT ASRS system for Greater Omaha's automated freezer.

30. Before contracting with SRSI, SRSI represented to Greater Omaha that it had successfully installed and operated RAFT ASRS systems before.

31. SRSI represented to Greater Omaha that the RAFT ASRS system would be fit for Greater Omaha's particular purpose in operating a fully automated freezer warehouse.

- 5 -

32.     SRSI's representations regarding its expertise, ability, and history of successfully installing equipment to operate a fully automated freezer warehouse induced Greater Omaha to contract with SRSI.

33.     Contrary to SRSI's representations, it had never manufactured, installed, written software for, or built a system similar to the one it installed in Greater Omaha's plant.

**The Written Proposal**

34.     On May 22, 2022, SRSI submitted Proposal # 3155 to Greater Omaha (the "Proposal").

35.     In the Proposal, SRSI proposed to install a RAFT ASRS at Greater Omaha that would include 2,409 pallet storage locations, ten RAFT robots, and four vertical transfer units (the "VTU"), among other items (the "RAFT System").

36.     In the Proposal, SRSI warranted that the RAFT System would be able to induct fifty pallets per hour, discharge fifty pallets plus per hour, and would have a total surge capacity of 100 pallet moves per hour.

37.     In the Proposal, SRSI warranted that a RAFT robot could handle pallet loads weighing up to 3,300 pounds.

38.     In the Proposal, SRSI warranted that it would provide a Robotic Traffic Management System which is the software system that operates the RAFT System.

39.     SRSI represented to Greater Omaha that the Robotic Traffic Management System software had been written and used on prior installations, when in fact it had not.

- 6 -

40.    In the Proposal, SRSI warranted that it would provide systems operations training to Greater Omaha's employees on how to operate the RAFT System, including classroom and hands-on instruction and equipment training.

41.    In the Proposal, SRSI warranted that it would provide an in-line strapping machine that would have a production rate of 100 loads per hour.

42.    An in-line strapping machine automatically applies strapping bands to palletized boxes to secure them making them easier to handle and transport by preventing shifting of the boxes on a pallet.

43.    SRSI proposed a fifty-six-week timeline to complete the RAFT System from the date SRSI received Greater Omaha's deposit.

44.    SRSI proposed to charge Greater Omaha $7,400,110 for the RAFT System, $1,551,683 for the conveyor system, and additional amounts for system support, spare parts, and quarterly maintenance.

45.    SRSI proposed to complete installation of the RAFT System for a total of $9,106,242.

46.    The Raft System did not include construction of the ten-story freezer building in which the RAFT System would be housed.

47.    Based on SRSI's representations regarding the capability of the RAFT System it would provide, Greater Omaha separately constructed the freezer warehouse building to accommodate the RAFT System at an additional cost of millions of dollars.

**Greater Omaha Accepts SRSI's Proposal**

48.    On July 11, 2022, Greater Omaha and SRSI signed an acceptance of the Proposal (the "Contract").

49.   A true and correct copy of the Contract is attached hereto as Exhibit A.

50.   On July 11, 2022, Greater Omaha paid SRSI $3,642,496.80 for the initial deposit due under the Contract (the "Deposit").

51.   Greater Omaha's payment of the Deposit triggered the fifty-six-week timeline for SRSI to substantially complete installation of the RAFT System making the Substantial Completion Date of the project August 7, 2023.

52.   Section 18 of the terms and conditions of the Contract provided that SRSI would pay Greater Omaha $1,000 per day for each calendar day the completion of the work is delayed beyond the Substantial Completion Date, not to exceed $100,000.

**SRSI fails to properly manage the RAFT Project**

53.   Pursuant to the Contract, "SRSI will assign a Project Manager responsible to oversee the installation activities and implementation."

54.   During the course of the project, SRSI's project managers turned over numerous times causing delays in SRSI completing the RAFT Project.

55.   SRSI's lack of consistent project management negatively affected the quality of the work SRSI performed.

**SRSI fails to deliver completed software to run the RAFT System**

56.   As of June 12, 2024, approximately 310 days *after* the Substantial Completion Date, SRSI informed Greater Omaha that less than fifty percent of the software needed to operate the RAFT System

had been written and that failure issues could not be identified or remedied.

## The RAFT System Fails to Operate as Warranted

57.     SRSI warranted that the RAFT System would be able to make 100 pallet moves an hour.

58.     As of June 12, 2024, approximately eleven months after the Substantial Completion Date, the RAFT System was unable to make 100 pallet moves per hour.

59.     As of June 12, 2024, approximately eleven months after the Substantial Completion Date, the RAFT System was typically able to make less than 200 pallet moves in a nine-hour day---or approximately 22 pallet moves an hour.

60.     The RAFT System has never met the contractual performance indicators promised in the Contract.

61.     Since its installation, the RAFTs have repeatedly lost power. This has required Greater Omaha personnel to enter the freezer and jump start them or physically remove them, resulting in prolonged production downtime, additional labor costs, and delayed shipping.

62.     To date, only five of the ten RAFT robots SRSI agreed to provide to Greater Omaha are functional.

63.     Because the RAFT System regularly malfunctions, Greater Omaha has had to move pallets manually.

64.     Because the in-line strapping machine SRSI provided regularly malfunctions, Greater Omaha has had to manually strap pallets.

65.    Because the RAFT System malfunctions so frequently, Greater Omaha has had to manually monitor the RAFT robots, and enter the freezer to move, restart, or adjust the RAFTs and to straighten and restack pallets.

66.    The batteries on the RAFT robots malfunctioned, failed to keep a charge, and never worked as warranted.

67.    SRSI eventually replaced the batteries in the RAFTs with a new type of battery but those batteries did not work either.

68.    Even after SRSI replaced the batteries on the RAFT robots, they continued to malfunction.

69.    One of the RAFT robots malfunctioned and drove off its rails, and fell on the floor on the level below resulting in it being irreparably damaged.

70.    The safety features of the RAFT system never functioned properly.

71.    SRSI took the damaged RAFT robot back but never repaired or replaced it or refunded Greater Omaha.

72.    The RAFT System has never operated per the specifications set forth in the Contract.

73.    Because of the repeated failures of the RAFT System, Greater Omaha has had to dedicate staff to manually operate and monitor aspects of the RAFT System that SRSI represented would be fully automated.

74.    The failures of SRSI's RAFT System negatively impact Greater Omaha's ability to operate its production line and deliver orders to its customers in a timely manner, and has caused Greater Omaha to incur increased labor costs and decreased productivity.

75.    The failures of the RAFT System also caused safety concerns. The Cube is a ten story building that operates at a temperature of ten degrees below zero.

76.    Because of the extreme cold, the freezer is not designed for workers to enter the freezer for an extended period of time.

77.    Because the RAFT robots regularly malfunctioned while in the Cube, Greater Omaha employees had to enter the freezer to attempt to manually reboot, jump start, or manually move the RAFT robots exposing employees to extreme cold.

78.    In some instances the RAFT robots have malfunctioned causing 80 pound boxes to fall from heights within the Cube, and have caused entire pallets weighing more than a thousand pounds to tip over.

**SRSI fails to cure the defects in the RAFT System**

79.    Greater Omaha notified SRSI of the defects in the RAFT System, and that SRSI was in default of its obligations under the Contract.

80.    Greater Omaha has provided SRSI the opportunity to fix the RAFT System and cure SRSI's defaults under the Contract, but SRSI has failed to do so.

**SRSI Walks off the Project**

81.    Rather than repair or replace the defective RAFT System, on April 17, 2025, SRSI walked off the project.

82.    At the time SRSI abandoned the project, SRSI had not completed the project.

83.    At the time SRSI abandoned the project, the RAFT System was not fully operable.

84.    Upon information and belief on April 25, 2025, SRSI terminated all of its employees and ceased operations.

**The Limited Remedies Provision in the Contract**
**Fails of its Essential Purpose**

85.    SRSI has been unable, or unwilling, to repair or replace the RAFT System with a system that functions per the specifications in the Contract.

86.    SRSI's limited repair or replacement warranty has failed of its essential purpose.

87.    Because the limited remedy of repair or replacement has failed of its essential purpose, Greater Omaha is entitled to all remedies available under the Uniform Commercial Code, including consequential damages. *See* Neb. U.C.C. § 2-719(2).

### FIRST CLAIM---BREACH OF CONTRACT

88.    Greater Omaha hereby reincorporates Paragraphs 1 through 87 of its complaint as if fully set forth herein.

89.    SRSI breached its Contract with Greater Omaha by failing to deliver a RAFT System that complied with the terms of the Contract.

90.    SRSI breached the Contract by failing to deliver a fully functioning RAFT System by the Substantial Completion date.

91.    Greater Omaha has satisfied all enforceable conditions precedent under its Contract.

92.    As a direct and proximate result of SRSI's breaches, Greater Omaha has been damaged, and is entitled to direct and consequential damages in an amount to be proven at trial, plus liquidated damages in the amount of $100,000 due to SRSI's delay in providing the RAFT System.

## SECOND CLAIM---BREACH OF EXPRESS WARRANTIES

93.    Greater Omaha hereby reincorporates Paragraphs 1 through 87 of its complaint as if fully set forth herein.

94.    SRSI represented and warranted to Greater Omaha that the RAFT System would operate consistent with the specifications identified in the Contract.

95.    SRSI breached the express warranties it made in the Contract by failing to deliver a functioning RAFT System that was able to perform consistent with the specifications contained in the Contract.

96.    As a direct and proximate result of SRSI's breach, Greater Omaha has been damaged.

97.    As a direct and proximate result of SRSI's breach, Greater Omaha has and continues to sustain damages in an amount to be proven at trial.

## THIRD CLAIM---BREACH OF THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

98.    Greater Omaha hereby reincorporates Paragraphs 1 through 87 of its complaint as if fully set forth herein.

99.    SRSI had reason to know that Greater Omaha's particular purpose in purchasing the RAFT System was to be able to operate a fully automated freezer warehouse for Greater Omaha's specific needs in storing frozen boxed beef using SRSI's RAFT robots.

100.    SRSI had reason to know that Greater Omaha was relying on SRSI's skill or judgment to furnish Greater Omaha with appropriate equipment to operate a fully automated storage freezer.

101.    Greater Omaha relied on SRSI's skill or judgment in providing a RAFT System to meet Greater Omaha's needs in having a fully automated freezer warehouse.

102.    SRSI warranted that the RAFT System it sold to Greater Omaha would be fit for Greater Omaha's particular purpose in operating a fully automated storage freezer warehouse.

103.    As a direct and proximate result of SRSI's breach, Greater Omaha has been damaged.

## FOURTH CLAIM---BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

104.    Greater Omaha hereby reincorporates Paragraphs 1 through 87 of its complaint as if fully set forth herein.

105.    SRSI sold the RAFT System to Greater Omaha.

106.    SRSI was a merchant with respect to the RAFT System at the time of the sale.

107.    The RAFT System SRSI provided to Greater Omaha was not merchantable at the time SRSI delivered it to Greater Omaha.

108.    Greater Omaha gave SRSI notice of SRSI's breach of the implied warranty within a reasonable time after Greater Omaha discovered or should have discovered SRSI's breach.

109.    SRSI's breach of the implied warranty of merchantability proximately caused damage to Greater Omaha.

### FIFTH CLAIM---NEGLIGENT MISREPRESENTATION

110.    Greater Omaha hereby reincorporates Paragraphs 1 through 87 of its complaint as if fully set forth herein.

111.    Before entering into the Contract, representatives met with Greater Omaha.

112.    During these meetings, SRSI made representations to Greater Omaha including, but not limited to, that SRSI had the necessary expertise to construct, design, and integrate a fully automated warehouse system that would meet Greater Omaha's needs.

113.    SRSI made these representations to Greater Omaha to induce it to enter into the Contract.

114.    These representations were false and were, at a minimum, made negligently and without reasonable care.

115.    These representations were made to Greater Omaha with the intention that it would rely upon them.

116.    Contrary to the aforesaid representations, SRSI and its agents and/or employees: (a) did not have experience in designing and implementing a fully automated freezer warehouse; (b) did not have the expertise or capacity to provide the technical assistance required for a fully functional and automated system.

117.    Greater Omaha relied on the aforementioned representations and was induced to enter into the Contract by them.

118.    As a direct and proximate result of SRSI's false and negligent misrepresentations, Greater Omaha has been damaged in an amount to be proven at trial.

### SIXTH CLAIM---FRAUDULENT MISREPRESENTATION

119.    Greater Omaha hereby reincorporates Paragraphs 1 through 87 of its complaint as if fully set forth herein.

120.    Before entering into the Contract, representatives met with Greater Omaha.

121.    During these meetings, SRSI made representations to Greater Omaha including, but not limited to, that SRSI had the necessary expertise to construct, design, and integrate a fully automated warehouse system that would meet Greater Omaha's needs.

122.    SRSI made these representations to Greater Omaha to induce it to enter into the Contract.

123.    These representations were false, and SRSI knew they were false when made.

124.    These representations were made to Greater Omaha with the intention that it would rely upon them.

125.    Contrary to the aforesaid representations, SRSI and its agents and/or employees: (a) did not have experience in designing and implementing a fully automated freezer warehouse; (b) did not have the expertise or capacity to provide the technical assistance required for a fully functional and automated system.

126.    Greater Omaha relied on the aforementioned representations and was induced to enter into the Contract by them.

127.    As a direct and proximate result of SRSI's false and negligent misrepresentations, Greater Omaha has been damaged in an amount to be proven at trial.

### SEVENTH CLAIM—FRAUDULENT CONCEALMENT

128.    Greater Omaha hereby reincorporates Paragraphs 1 through 87 of its complaint as if fully set forth herein.

129.    The fact that the RAFT System SRSI was proposing to install at Greater Omaha had never been successfully tested or used in a freezer environment was a material fact.

130.    The fact that the software that would be used to operate the RAFT System had not been written was a material fact.

131.    SRSI had a duty to disclose these material facts to Greater Omaha.

132.    SRSI, with knowledge of these facts, concealed them from Greater Omaha.

133.    SRSI concealed these facts from Greater Omaha with the intention that Greater Omaha would act in response to the concealment.

134.    Greater Omaha reasonably relied on the facts as it believed them to be as a result of SRSI's concealment acted by entering into the Contract.

135.    As a direct and proximate result of SRSI's concealment of material facts, Greater Omaha was damaged in an amount to be proven at trial.

## JURY DEMAND

Greater Omaha demands a jury trial on all issues triable to a jury.

## REQUEST FOR RELIEF

WHEREFORE, Greater Omaha respectfully requests that the Court enter judgment against SRSI, and in favor of Greater Omaha,

and award Greater Omaha its direct and consequential damages in an amount to be proven at trial, liquidated damages in the amount of $100,000, pre-judgment interest as allowed by law, and any other further relief the Court deems fair and equitable.

DATED this 4th day of August, 2025.

GREATER OMAHA PACKING CO. INC., Plaintiff,

BY:    /s/ Michael F. Coyle
       Michael F. Coyle, #18299
       Timothy J. Thalken, #22173
       Olivia F. Stanek, #28219
       FRASER STRYKER PC LLO
       500 Energy Plaza
       409 South 17th Street
       Omaha, NE 68102
       (402) 341-6000
       (402) 341-8290 - fax
       mcoyle@fraserstryker.com
       tthalken@fraserstryker.com
       ostanek@fraserstryker.com
       ATTORNEYS FOR PLAINTIFF

3400785.04

Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI250006523
Transaction ID: 0024032015
Filing Date: 10/21/2025 05:34:36 PM CDT

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | |
|---|---|
| GREATER OMAHA PACKING CO. INC., | ) CASE NO. CI 25-6523 ) |
| Plaintiff, | ) ) |
| v. | ) **PLAINTIFF'S FIRST** ) **AMENDED COMPLAINT** ) **AND DEMAND FOR** |
| SLATE RIVER SYSTEMS, INC., | ) **TRIAL BY JURY** ) |
| Defendant. | ) |

For its Amended Complaint, Greater Omaha Packing Co., Inc. ("Greater Omaha"), states and alleges as follows:

### THE PARTIES

1.      Greater Omaha is a Nebraska corporation with its principal place of business in Omaha, Nebraska.

2.      Slate River Systems, Inc. ("SRSI") is a Texas corporation with its principal place of business in Texas who filed bankruptcy in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, at Case No. 25-41807-mxm7.

3.      On July 28, 2025, the United States Bankruptcy Judge for the Northern District of Texas, entered an Order granting relief from stay allowing Greater Omaha to pursue litigation against SRSI. A copy of that Order is attached hereto and marked as Exhibit "A".

### JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction pursuant to Neb. Rev. Stat. § 24-302.

5.      This Court has personal jurisdiction over SRSI who contractually consented to personal jurisdiction in Nebraska. In

EXHIBIT
B

addition, SRSI purposefully availed itself of the protections of
Nebraska law with respect to the transaction at issue.

6.     Venue is proper pursuant to Neb. Rev. Stat. § 25-403.01
because this lawsuit is brought in a county where the action arose,
where some part of the transaction occurred out of which the cause of
action arose, and because SRSI is a non-resident of this State, and
because the parties' agreement contains a forum selection clause
designating this court as a proper venue.

## FACTUAL ALLEGATIONS

7.     Greater Omaha is an Omaha-based company that
processes and ships beef around the world.

8.     Because of the perishable nature of beef, Greater Omaha
freezes some of its product lines and stores them onsite on pallets.

9.     To accommodate the storage of frozen beef, Greater
Omaha embarked on a project to build a new, ten story tall, fully
automated freezer storage warehouse, which was known as "the Cube."

10.     Including the cost of building the Cube, the total cost of
this project was approximately $40 million.

11.     Greater Omaha sought proposals from vendors skilled in
providing automated warehouse storage solutions.

12.     SRSI is one vendor who submitted a proposal to Greater
Omaha for a fully automated freezer storage warehouse.

### *SRSI's Expertise in Automated Storage Retrieval System*

13.     SRSI sells automated storage retrieval systems ("ASRS").

14.     SRSI is a merchant with respect to ASRS.

15.    SRSI maintained a website which has recently been taken down and its data made inaccessible.

16.    According to SRSI's website, ASRS are "computer-controlled systems that automatically place and retrieve loads from set storage locations in a facility with precision, accuracy and speed. They are designed for automated storage and retrieval of parts and items in manufacturing, distribution, retail, wholesale and institutions."

17.    SRSI holds itself out to the public as having the skill and judgment to design and successfully install and implement ASRS for warehouses.

18.    According to SRSI's website, "SRSI is a material-handling systems integrator specializing in automation and warehouse information and software systems. We deliver comprehensive, turnkey solutions designed to meet---and exceed---your performance goals."

19.    According to SRSI's website, SRSI is able to "leverage data analysis and expert planning to design and implement automated systems that streamline your operations, solve labor challenges, and optimize inventory control."

***SRSI's RAFT ASRS***

20.    One type of ASRS uses a Right Angle Fast Transfer ("RAFT") robot to move pallets.

21.    Below is a photograph of a RAFT robot from SRSI's website:



22.     According to SRSI's website, "RAFT is capable of having its robots maneuver horizontally and vertically, combining the density of AutoStore, with some of the benefits of a more traditional shuttle system. The result is a technology that densely stores pallets and brings them to any position on the exterior of the grid structure to be picked. RAFT's pallet storage technique allows for an easy integration with conveyors and robotics, or with more traditional manual picks via an individual or fork truck."

23.     SRSI's website states that the benefits of RAFT include:

- RAFT reduces labor and increasing efficiency enabling rapid return on investment

- Maximize storage, increase speed, flexible loading, intuitive user interface, and scalable – add rack, add bots as you expand

- Operates without cranes making ceiling height a non-issue

- Comprises of a customizable grid structure, with robots maneuvering pallets

- Capable of maneuvering pallets horizontally and vertically

- Densely stores pallets and brings them to any position on the exterior of the grid structure allocated

24.    Before contracting with Greater Omaha, SRSI represented to Greater Omaha that it had developed and deployed software to operate the RAFTs at other facilities.

25.    Before contracting with Greater Omaha, SRSI represented to Greater Omaha that the hardware it would provide to Greater Omaha had been tested and used in a freezer environment.

26.    SRSI concealed from Greater Omaha the fact that the RAFTs had never been tested or used in a freezer environment.

27.    SRSI concealed from Greater Omaha that the software that would be used to operate the RAFT System had not been written or tested.

28.    Based on SRSI's representations, and concealments, Greater Omaha reasonably believed that the RAFT System SRSI was proposing had been successfully used in freezer environments and that the software to operate the RAFT System had been written and deployed at other facilities.

***SRSI Proposes to Sell a RAFT ASRS to Greater Omaha***

29.    Greater Omaha met with SRSI to discuss Greater Omaha's specific needs with respect to an ASRS for a new storage freezer warehouse Greater Omaha was planning to build.

30.    SRSI represented to Greater Omaha that SRSI had the skill, knowledge, and expertise to design and successfully install and implement a fully automated RAFT ASRS system for Greater Omaha's automated freezer.

31.     Before contracting with SRSI, SRSI represented to
Greater Omaha that it had successfully installed and operated RAFT
ASRS systems before.

32.     SRSI represented to Greater Omaha that the RAFT ASRS
system would be fit for Greater Omaha's particular purpose in
operating a fully automated freezer warehouse.

33.     SRSI's representations regarding its expertise, ability,
and history of successfully installing equipment to operate a fully
automated freezer warehouse induced Greater Omaha to contract with
SRSI.

34.     Contrary to SRSI's representations, it had never
manufactured, installed, written software for, or built a system similar
to the one it installed in Greater Omaha's plant.

### *The Written Proposal*

35.     On May 22, 2022, SRSI submitted Proposal # 3155 to
Greater Omaha (the "Proposal").

36.     In the Proposal, SRSI proposed to install a RAFT ASRS at
Greater Omaha that would include 2,409 pallet storage locations, ten
RAFT robots, and four vertical transfer units (the "VTU"), among other
items (the "RAFT System").

37.     In the Proposal, SRSI warranted that the RAFT System
would be able to induct fifty pallets per hour, discharge fifty pallets
plus per hour, and would have a total surge capacity of 100 pallet
moves per hour.

38.     In the Proposal, SRSI warranted that a RAFT robot could
handle pallet loads weighing up to 3,300 pounds.

39.    In the Proposal, SRSI warranted that it would provide a Robotic Traffic Management System which is the software system that operates the RAFT System.

40.    SRSI represented to Greater Omaha that the Robotic Traffic Management System software had been written and used on prior installations, when in fact it had not.

41.    In the Proposal, SRSI warranted that it would provide systems operations training to Greater Omaha's employees on how to operate the RAFT System, including classroom and hands-on instruction and equipment training.

42.    In the Proposal, SRSI warranted that it would provide an in-line strapping machine that would have a production rate of 100 loads per hour.

43.    An in-line strapping machine automatically applies strapping bands to palletized boxes to secure them making them easier to handle and transport by preventing shifting of the boxes on a pallet.

44.    SRSI proposed a fifty-six-week timeline to complete the RAFT System from the date SRSI received Greater Omaha's deposit.

45.    SRSI proposed to charge Greater Omaha $7,400,110 for the RAFT System, $1,551,683 for the conveyor system, and additional amounts for system support, spare parts, and quarterly maintenance.

46.    SRSI proposed to complete installation of the RAFT System for a total of $9,106,242.

47.    The Raft System did not include construction of the ten-story freezer building in which the RAFT System would be housed.

48.    Based on SRSI's representations regarding the capability of the RAFT System it would provide, Greater Omaha separately

constructed the freezer warehouse building to accommodate the RAFT System at an additional cost of millions of dollars.

### Greater Omaha Accepts SRSI's Proposal

49.     On July 11, 2022, Greater Omaha and SRSI signed an acceptance of the Proposal (the "Contract").

50.     A true and correct copy of the Contract is attached hereto as Exhibit A.

51.     On July 11, 2022, Greater Omaha paid SRSI $3,642,496.80 for the initial deposit due under the Contract (the "Deposit").

52.     Greater Omaha's payment of the Deposit triggered the fifty-six-week timeline for SRSI to substantially complete installation of the RAFT System making the Substantial Completion Date of the project August 7, 2023.

53.     Section 18 of the terms and conditions of the Contract provided that SRSI would pay Greater Omaha $1,000 per day for each calendar day the completion of the work is delayed beyond the Substantial Completion Date, not to exceed $100,000.

### SRSI fails to properly manage the RAFT Project

54.     Pursuant to the Contract, "SRSI will assign a Project Manager responsible to oversee the installation activities and implementation."

55.     During the course of the project, SRSI's project managers turned over numerous times causing delays in SRSI completing the RAFT Project.

56.     SRSI's lack of consistent project management negatively affected the quality of the work SRSI performed.

***SRSI fails to deliver completed software to run the RAFT System***

57.    As of June 12, 2024, approximately 310 days *after* the Substantial Completion Date, SRSI informed Greater Omaha that less than fifty percent of the software needed to operate the RAFT System had been written and that failure issues could not be identified or remedied.

***The RAFT System Fails to Operate as Warranted***

58.    SRSI warranted that the RAFT System would be able to make 100 pallet moves an hour.

59.    As of June 12, 2024, approximately eleven months after the Substantial Completion Date, the RAFT System was unable to make 100 pallet moves per hour.

60.    As of June 12, 2024, approximately eleven months after the Substantial Completion Date, the RAFT System was typically able to make less than 200 pallet moves in a nine-hour day---or approximately 22 pallet moves an hour.

61.    The RAFT System has never met the contractual performance indicators promised in the Contract.

62.    Since its installation, the RAFTs have repeatedly lost power. This has required Greater Omaha personnel to enter the freezer and jump start them or physically remove them, resulting in prolonged production downtime, additional labor costs, and delayed shipping.

63.    Due to the malfunctioning RAFT robots, frozen beef products of Greater Omaha that are stored in "the Cube" have been damaged, destroyed and caused further property damage as a direct result of the unintended and unexpected consequence of the RAFT robots' malfunctioning.

64.    To date, only five of the ten RAFT robots SRSI agreed to provide to Greater Omaha are functional.

65.    Because the RAFT System regularly malfunctions, Greater Omaha has had to move pallets manually.

66.    Because the in-line strapping machine SRSI provided regularly malfunctions, Greater Omaha has had to manually strap pallets.

67.    Because the RAFT System malfunctions so frequently, Greater Omaha has had to manually monitor the RAFT robots, and enter the freezer to move, restart, or adjust the RAFTs and to straighten and restack pallets.

68.    The batteries on the RAFT robots malfunctioned, failed to keep a charge, and never worked as warranted.

69.    SRSI eventually replaced the batteries in the RAFTs with a new type of battery but those batteries did not work either.

70.    Even after SRSI replaced the batteries on the RAFT robots, they continued to malfunction.

71.    One of the RAFT robots malfunctioned and drove off its rails, and fell on the floor on the level below resulting in it being irreparably damaged.

72.    The safety features of the RAFT system never functioned properly.

73.    SRSI took the damaged RAFT robot back but never repaired or replaced it or refunded Greater Omaha.

74.    The RAFT System has never operated per the specifications set forth in the Contract.

75.    Because of the repeated failures of the RAFT System, Greater Omaha has had to dedicate staff to manually operate and monitor aspects of the RAFT System that SRSI represented would be fully automated.

76.    The failures of SRSI's RAFT System negatively impact Greater Omaha's ability to operate its production line and deliver orders to its customers in a timely manner, and has caused Greater Omaha to incur increased labor costs and decreased productivity.

77.    The failures of the RAFT System also caused safety concerns. The Cube is a ten story building that operates at a temperature of ten degrees below zero.

78.    Because of the extreme cold, the freezer is not designed for workers to enter the freezer for an extended period of time.

79.    Because the RAFT robots regularly malfunctioned while in the Cube, Greater Omaha employees had to enter the freezer to attempt to manually reboot, jump start, or manually move the RAFT robots exposing employees to extreme cold.

80.    In some instances the RAFT robots have malfunctioned causing 80 pound boxes to fall from heights within the Cube, and have caused entire pallets weighing more than a thousand pounds to tip over.

***SRSI fails to cure the defects in the RAFT System***

81.    Greater Omaha notified SRSI of the defects in the RAFT System, and that SRSI was in default of its obligations under the Contract.

82.    Greater Omaha has provided SRSI the opportunity to fix the RAFT System and cure SRSI's defaults under the Contract, but SRSI has failed to do so.

- 11 -

***SRSI Walks off the Project***

83.   Rather than repair or replace the defective RAFT System, on April 17, 2025, SRSI walked off the project.

84.   At the time SRSI abandoned the project, SRSI had not completed the project.

85.   At the time SRSI abandoned the project, the RAFT System was not fully operable.

86.   Upon information and belief on April 25, 2025, SRSI terminated all of its employees and ceased operations.

***The Limited Remedies Provision in the Contract***
***Fails of its Essential Purpose***

87.   SRSI has been unable, or unwilling, to repair or replace the RAFT System with a system that functions per the specifications in the Contract.

88.   SRSI's limited repair or replacement warranty has failed of its essential purpose.

89.   Because the limited remedy of repair or replacement has failed of its essential purpose, Greater Omaha is entitled to all remedies available under the Uniform Commercial Code, including consequential damages. *See* Neb. U.C.C. § 2-719(2).

## FIRST CLAIM—BREACH OF CONTRACT

90.   Greater Omaha hereby reincorporates Paragraphs 1 through 89 of its First Amended Complaint as if fully set forth herein.

91.   SRSI breached its Contract with Greater Omaha by failing to deliver a RAFT System that complied with the terms of the Contract.

92.    SRSI breached the Contract by failing to deliver a fully functioning RAFT System by the Substantial Completion date.

93.    Greater Omaha has satisfied all enforceable conditions precedent under its Contract.

94.    As a direct and proximate result of SRSI's breaches, Greater Omaha has been damaged, and is entitled to direct and consequential damages in an amount to be proven at trial, plus liquidated damages in the amount of $100,000 due to SRSI's delay in providing the RAFT System.

## SECOND CLAIM---BREACH OF EXPRESS WARRANTIES

95.    Greater Omaha hereby reincorporates Paragraphs 1 through 94 of its complaint as if fully set forth herein.

96.    SRSI represented and warranted to Greater Omaha that the RAFT System would operate consistent with the specifications identified in the Contract.

97.    SRSI breached the express warranties it made in the Contract by failing to deliver a functioning RAFT System that was able to perform consistent with the specifications contained in the Contract.

98.    As a direct and proximate result of SRSI's breach, Greater Omaha has been damaged.

99.    As a direct and proximate result of SRSI's breach, Greater Omaha has and continues to sustain damages in an amount to be proven at trial.

- 13 -

## THIRD CLAIM-–BREACH OF THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

100.    Greater Omaha hereby reincorporates Paragraphs 1 through 99 of its complaint as if fully set forth herein.

101.    SRSI had reason to know that Greater Omaha's particular purpose in purchasing the RAFT System was to be able to operate a fully automated freezer warehouse for Greater Omaha's specific needs in storing frozen boxed beef using SRSI's RAFT robots.

102.    SRSI had reason to know that Greater Omaha was relying on SRSI's skill or judgment to furnish Greater Omaha with appropriate equipment to operate a fully automated storage freezer.

103.    Greater Omaha relied on SRSI's skill or judgment in providing a RAFT System to meet Greater Omaha's needs in having a fully automated freezer warehouse.

104.    SRSI warranted that the RAFT System it sold to Greater Omaha would be fit for Greater Omaha's particular purpose in operating a fully automated storage freezer warehouse.

105.    As a direct and proximate result of SRSI's breach, Greater Omaha has been damaged.

## FOURTH CLAIM-–BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

106.    Greater Omaha hereby reincorporates Paragraphs 1 through 105 of its complaint as if fully set forth herein.

107.    SRSI sold the RAFT System to Greater Omaha.

108.    SRSI was a merchant with respect to the RAFT System at the time of the sale.

- 14 -

109.   The RAFT System SRSI provided to Greater Omaha was not merchantable at the time SRSI delivered it to Greater Omaha.

110.   Greater Omaha gave SRSI notice of SRSI's breach of the implied warranty within a reasonable time after Greater Omaha discovered or should have discovered SRSI's breach.

111.   SRSI's breach of the implied warranty of merchantability proximately caused damage to Greater Omaha.

### FIFTH CLAIM---NEGLIGENCE

112.   Greater Omaha hereby reincorporates Paragraphs 1 through 111 of its First Amended Complaint as if fully set forth herein.

113.   SRSI had a duty to design and manufacture its equipment using due care and with good workmanship.

114.   SRSI breached its duty by negligently designing and manufacturing its equipment and in performing faulty workmanship.

115.   As a direct and proximate result of its breach, SRSI's equipment caused accidental physical damage to property, other than the SRSI equipment itself, belonging to Greater Omaha, including but not limited to boxes of beef, structures, and buildings, and the loss of use of property belonging to Greater Omaha.

116.   Greater Omaha further seeks damages to its product, as well as to other appurtenances associated inside the "Cube" which have resulted in substantial damage to both the beef products of Greater Omaha as well as to the structures and buildings.

**JURY DEMAND**

Greater Omaha demands a jury trial on all issues triable to a jury.

**REQUEST FOR RELIEF**

WHEREFORE, Greater Omaha respectfully requests that the Court enter judgment against SRSI, and in favor of Greater Omaha, and award Greater Omaha its damages in an amount to be proven at trial, pre-judgment interest as allowed by law, and any other further relief the Court deems fair and equitable.

DATED this 21st day of October, 2025.

GREATER OMAHA PACKING CO. INC., Plaintiff,

BY:    /s/ Michael F. Coyle
Michael F. Coyle, #18299
Timothy J. Thalken, #22173
Olivia F. Stanek, #28219
FRASER STRYKER PC LLO
500 Energy Plaza
409 South 17th Street
Omaha, NE  68102
(402) 341-6000
(402) 341-8290 - fax
mcoyle@fraserstryker.com
tthalken@fraserstryker.com
ostanek@fraserstryker.com
ATTORNEYS FOR PLAINTIFF

3474060.02

- 16 -



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 28, 2025**

**United States Bankruptcy Judge**

_____



### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

_____

|  | § |  |
|---|---|---|
| In Re: | § | |
| | § | Case No. 25-41807-mxm7 |
| SLATE RIVER SYSTEMS, INC., | § | |
| | § | |
| Debtor. | § | |
| | § | |
_____ | §

### AGREED ORDER GRANTING MOTION FOR RELIEF FROM STAY
### TO LIQUIDATE STATE LAW CLAIMS

CAME ON FOR HEARING the Motion for Relief from Stay to Pursue Insurance Policy

Claims and Proceeds [Docket No.41] (the "Motion") filed by Greater Omaha Packing Co., Inc.

("Greater Omaha"). The Court finds that notice of the Motion has been properly given under

Bankruptcy Rule 4001 and Local Rule 4001-1(b). The Court further finds that there is cause to

grant relief from the automatic stay under 11 U.S.C. §362(d)(1) with the conditions stated in this

Order. It is therefore:

**ORDERED** that relief from the automatic stay is granted for cause to allow Greater

Omaha to pursue its state law claims against the Debtor and against any insurer that may have

issued a policy covering such claims; and it is further

       **ORDERED** that the claim of Greater Omaha against the Debtor may be liquidated in any

such litigation; and it is further

       **ORDERED** that prior to seeking to collect any insurance proceeds in such litigation,

Greater Omaha shall obtain further relief from the automatic stay or otherwise obtain relief from

the Court.

Agreed:

/s/ Christopher J. Volkmer
Christopher J. Volkmer
Texas Bar No. 20607800
CAVAZOS HENDRICKS POIROT, P.C.
Suite 570, Founders Square
900 Jackson Street
Dallas, TX  75202
Phone: (214) 573-7322

Counsel for Greater Omaha Packing, Inc.

/s/ Brian T. Cumings
Brian T. Cumings
Graves Dougherty Hearon & Moody, P.C.
401 Congress Ave., Suite 2700
Austin, Texas 78701
Phone (512) 480-5626
Email: bcumings@gdhm.com

Proposed Counsel for Behrooz Vida, Trustee

### END OF ORDER ###

## Certificate of Service

I hereby certify that on Wednesday, October 22, 2025 I provided a true and correct copy of the Amended Complaint to the following:

Greater Omaha Packing Co., Inc. represented by ROGERS, TREVOR (Bar Number: 27654) service method: Electronic Service to trogers@fraserstryker.com

Greater Omaha Packing Co., Inc. represented by Stanek, Olivia F (Bar Number: 28219) service method: Electronic Service to ostanek@FraserStryker.com

Greater Omaha Packing Co., Inc. represented by Thalken,Timothy,J, (Bar Number: 22173) service method: Electronic Service to tthalken@fslf.com

Signature: /s/ Coyle,Michael,F (Bar Number: 18299)